<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GABRIEL ACOSTA, | : | |
| | : | Civil Action No. 12-6614(NLH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN SCHULTZ, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

Gabriel Acosta
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640
     Plaintiff <u>pro se</u>

**HILLMAN,** District Judge

     Plaintiff Gabriel Acosta, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, seeks to bring this action pursuant to pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., asserting claims arising out of an alleged attack by another prisoner and the subsequent actions of prison officials.

     Plaintiff has filed a Motion [3] for leave to amend the

Complaint, attaching to such Motion a proposed Amended Complaint.  This Court will grant the Motion to amend and direct the Clerk of the Court to file the Amended Complaint.

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.  Plaintiff alleges that on the evening of October 19, 2010, while he was incarcerated at the Federal Correctional Institution at Fairton, New Jersey, he was physically attacked for approximately six to seven minutes by another inmate, Salvador Garcia-Paredes.[1]  According to Plaintiff, the Defendant Unidentified Correctional Officer

---

[1] Plaintiff describes Garcia-Paredes as "an institutional bully who was known to the prison as having a long history of assaulting other inmates who he perceived could not defend themselves."  Amended Complaint at 11.

2

assigned to the area was away from his duty station, as was the Defendant Unidentified Correctional Officer assigned to monitor the security system.  Plaintiff believes that, had these officers been present at their duty stations, they could have stopped the attack, or alerted other officers to stop the attack.  Eventually, Plaintiff was able to defend himself and escape his attacker, going into the prison's gym, where he collapsed and prison staff became aware of the attack.

Plaintiff asserts that he was taken to the infirmary, where the duty nurse noted that Plaintiff stated that he had lost consciousness, and that his injuries included numerous bruises, lumps, abrasions, a puncture wound, and an eye swollen shut. The duty nurse further noted that Plaintiff was very confused, nauseated, and unable to ambulate unassisted.

Plaintiff asserts that, before he was transported to the local hospital for examination and treatment, Defendant Special Investigative Service ("SIS") Officer Davenport insisted on interviewing him about the attack.  Plaintiff does not state how long this interview lasted, but states that the attack occurred at approximately 6:40 p.m. and that he was admitted to the South Jersey Regional Medical Center at nearly 9:00 p.m.

At the Emergency Room of the South Jersey Regional Medical Center, Plaintiff underwent CT scans and X-rays.  The tests

revealed that he had suffered, among other injuries, a concussion and a nasal bone fracture with periorbital soft tissue swelling.  Plaintiff's discharge papers included instructions for concussion observation, including an instruction that somebody stay with Plaintiff for the next 24 hours and wake him every two hours.

Plaintiff contends that, contrary to the concussion instructions, upon his return to the prison he was placed in a Special Housing Unit cell by himself, where he was allowed to go to sleep and was not awakened for several hours.  In addition, Plaintiff describes his cell has having only extremely hot running water, so he felt compelled to clean his wounds with toilet water to avoid burning himself.

The following day, Plaintiff was taken to the prison infirmary for further treatment.  However, medical personnel were required to leave the treatment room so that Defendant SIS Lieutenant D. McCabe and SIS Officer P. Davenport could once again question him.  When Plaintiff refused to answer questions, Defendant Lt. McCabe stated that he would withhold medical treatment until Plaintiff answered his questions.  Plaintiff alleges that this resulted in a delay of his treatment and pain medication for more than an hour, until a nurse entered the room and insisted on treating Plaintiff.  Thereafter, Plaintiff was

4

examined by Defendant Dr. Morales, who concurred that Plaintiff had sustained a concussion, with loss of consciousness, and a nose fracture.  Dr. Morales advised Plaintiff that his facial deformity would likely prove permanent, which it did.

Plaintiff asserts that Defendant Dr. Morales refused to authorize any ophthalmologic evaluation, as recommended by the South Jersey Regional Medical Center doctors and that, as a result of this failure, Plaintiff has suffered permanent damage. Plaintiff does not describe the nature of the permanent damage he has suffered.  Plaintiff also contends that Dr. Morales failed to authorize timely release of Plaintiff's medical records to the Ear-Nose-Throat specialist, who consequently was unable to treat Plaintiff, and that Dr. Morales refused to authorize a second appointment.  Finally, Plaintiff contends that Dr. Morales failed to diagnose and treat a hernia that arose as a result of the assault.  Plaintiff notes that he was the subject of a disciplinary proceeding as a result of the incident with Garcia-Paredes; however, he is not challenging that proceeding here.

Plaintiff names as Defendants Warden Schultz, Assistant Warden Belefante, Captain Williams, Sergeant Woods, Unidentified Supervisory Officers, Dr. Ruben Morales, SIS Lt. D. McCabe, SIS Officer P. Davenport, the Unidentified Compound Officer, the

Unidentified Correctional Officer assigned to the security
camera, and the United States of America.  He seeks damages in
the amount of $2,500,000.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

Rule 8(a)(2) of the Federal Rules of Civil Procedure
requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief."
"Specific facts are not necessary; the statement need only 'give
the defendant fair notice of what the ... claim is and the
grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89,
93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do ... .  Factual allegations must be enough to
> raise a right to relief above the speculative level
> ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(citations omitted).  That is, a complaint must assert "enough
facts to state a claim to relief that is plausible on its face."
Id. at 570.

"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct

6

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing

Twombly, 550 U.S. at 556). Thus, a court is "not bound to

accept as true a legal conclusion couched as a factual

allegation," and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not

suffice." Ashcroft v. Iqbal, 556 U.S. at 678 (citations

omitted).

> To determine whether a complaint meets the pleading
> standard, our analysis unfolds in three steps. First,
> we outline the elements a plaintiff must plead to
> state a claim for relief. Next, we peel away those
> allegations that are no more than conclusions and thus
> not entitled to the assumption of truth. Finally, we
> look for well-pled factual allegations, assume their
> veracity, and then "determine whether they plausibly
> give rise to an entitlement to relief." This last
> step is "a context specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense."

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations

omitted).

In determining the sufficiency of a pro se complaint, the

Court must be mindful to accept its factual allegations as true,

see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir.

2012), and to construe it liberally in favor of the plaintiff,

see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States

v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), cited in Thomaston v. Meyer, 519 F.App'x 118, 120 n.2 (3d Cir. 2013); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.   ANALYSIS

A.   Plaintiff's Application to Proceed In Forma Pauperis

Although Plaintiff prepaid the filing fee for this matter, he later applied for leave to proceed in forma pauperis.  Title 28 U.S.C. ' 1915, establishes certain financial requirements for prisoners who are attempting to bring a civil action in forma pauperis.  Under § 1915, a prisoner seeking to bring a civil action in forma pauperis must submit an affidavit, including a statement of all assets and liabilities, which states that the prisoner is unable to pay the fees therefor.  28 U.S.C. ' 1915(a)(1).  The prisoner also must submit a certified copy of his inmate trust fund account statement(s) for the six-month period immediately preceding the filing of his complaint.  28 U.S.C. ' 1915(a)(2).  The prisoner must obtain the certified statement(s) from the appropriate official of each correctional

8

facility at which he was or is confined during such six-month period.  Id.

In this action, Plaintiff failed to submit a complete in forma pauperis application as required by 28 U.S.C. ' 1915(a)(1), (2).  More specifically, the application is deficient because the institutional account statements are not certified by an appropriate official.  See, e.g., Hairston, Sr. v. Gronolsky, 348 F.App'x 716 (3d Cir. 2009) (affirming administrative termination of prisoner civil rights action for failure to comply with requirements of § 1915); Tyson v. Youth Ventures, L.L.C., 42 F.App'x 221 (10th Cir. 2002) (affirming dismissal without prejudice of civil action where prisoner submitted only uncertified copy of institutional account statement); Johnson v. United States, 79 Fed.Cl. 769 (2007) (same).  See also Rohn v. Johnston, 415 F.App'x 353, 354-55 (3d Cir. 2011) (affirming dismissal without prejudice of civil action where prisoner failed to submit the required affidavit of poverty).  Accordingly, the application for leave to proceed in forma pauperis will be denied without prejudice to Plaintiff submitting a complete application.

To the extent Plaintiff asserts that correctional officials have refused to provide the certified account statement, any such assertion must be supported by an affidavit detailing the

9

circumstances of Plaintiff=s request for a certified institutional account statement and the correctional officials= refusal to comply, including the dates of such events and the names of the individuals involved.

B.    Bivens Claims

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  Of significance here, the Supreme Court has also implied damages remedies directly under the Eighth Amendment.  See Carlson v. Green, 446 U.S. 14 (1980).

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting cruel and unusual punishments on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to

10

"'contemporary standards of decency.'"  Hudson v. McMillian, 503

U.S. 1, 8 (1992) (citation omitted).  The subjective component

follows from the principle that "'only the unnecessary and

wanton infliction of pain implicates the Eighth Amendment.'"

See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson,

501 U.S. at 297 (internal quotation marks, emphasis, and

citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345

(1981).  What is necessary to establish an unnecessary and

wanton infliction of pain varies according to the nature of the

alleged constitutional violation.  Hudson v. McMillian, 503 U.S.

at 5.  See generally Allah v. Ricci, 532 F.App'x 48, 50-51 (3d

Cir. 2013) (citing Farmer, Hudson, Wilson, and Rhodes).

    1.  Failure to Protect and Failure to Supervise

    Plaintiff alleges that the prison's supervisory officials,

including Warden Schultz, Assistant Warden Belefante, Captain

Williams, Sergeant Woods, and other unnamed officers failed to

protect Plaintiff, in violation of the Eighth Amendment, by

permitting his attacker to remain in the medium-security prison

and by failing to properly supervise subordinate officers.[2]

---

[2] To the extent Plaintiff seeks to impose liability upon
supervisory personnel for the malfeasance of their subordinates,
he fails to state a claim.  Supervisors in Bivens actions may
not be held liable on a theory of respondeat superior.  See
Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Bistrian v. Levi,
696 F.3d 352, 366 (3d Cir. 2012).

In addition, Plaintiff asserts that two unnamed officers, the Compound Officer and the officer assigned to monitor the prison's security camera system, are liable for failure to protect him because they were away from their duty stations, causing a delay in response to the attack.

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate personal safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833 (1994) (internal quotations omitted).  "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a failure-to-protect claim for violation of the Eighth Amendment, as always, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that, in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson

12

v. Seiter, 501 U.S. 294, 305 (1991); Beers-Capitol v. Whetzel,
256 F.3d 120, 125 (3d Cir. 2001); Nami v. Fauver, 82 F.3d 63, 67
(3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate
must show that he is "incarcerated under conditions posing a
substantial risk of harm," Farmer, 511 U.S. at 833, and that
prison officials knew of and disregarded the excessive risk to
inmate safety, id. at 837.  "A pervasive risk of harm may not
ordinarily be shown by pointing to a single incident or isolated
incidents, but it may be established by much less than proof of
a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143,
147 (3d Cir. 1985).  Deliberate indifference is more than a mere
lack of ordinary due care, however; it is a state of mind
equivalent to a reckless disregard of a known risk of harm.
Farmer, 511 U.S. at 834.  That is, not only must a prison
official be "aware of facts from which the inference could be
drawn that a substantial risk of serious harm exists," but the
official "must also draw the inference." Farmer, 511 U.S. at
837.  "Whether ... prison official[s] had the requisite
knowledge of a substantial risk is a question of fact subject to
demonstration in the usual ways, including inference from
circumstantial evidence, and a fact finder may conclude that ...
prison official[s] knew of a substantial risk from the very fact

13

that the risk was obvious." <u>Farmer</u>, 511 U.S. at 842.

Here, Plaintiff alleges generally that Garcia-Paredes had a history of violence and that the various named defendants were deliberately indifferent for permitting Garcia-Paredes to be confined in a medium-security institution and for not monitoring him closely when he was with other prisoners.  However, a negligent failure to prevent an attack is insufficient to establish a violation of the Eighth Amendment.  <u>Davidson v. Cannon</u>, 474 U.S. 344, 345-48 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights).  <u>See also</u> <u>Bistrian v. Levi</u>, 696 F.3d 352, 371 (3d Cir. 2012) (stating that the "risk that an inmate with a history of violence might attack another inmate for an unknown reason" is too "speculative" to give rise to an inference of deliberate indifference).

Plaintiff also contends that, by leaving their duty stations, these officers violated their duty to provide for the safekeeping and protection of prisoners under 18 U.S.C. § 4042(a)(1)-(3).  Again, this is an allegation of mere negligence, not a violation of the Eighth Amendment duty to protect.  <u>See</u> <u>Schwartz v. County of Montgomery</u>, 843 F.Supp. 962 (E.D. Pa.), <u>aff'd</u>, 37 F.3d 1488 (3d Cir. 1994) (stating that

14

corrections officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which cannot support a § 1983 action for violation of the Eighth or Fourteenth Amendments).  Thus, these allegations of negligence are not sufficient to state a claim under the Eighth Amendment.

With respect to the allegation of failure to supervise subordinate correctional officers, the Court of Appeals for the Third Circuit historically has recognized two theories of supervisory liability applicable to § 1983 actions.

> Individual Defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).  ...

> The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004).[3]

---

[3] "'[S]upervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through

15

Again, as the Supreme Court has noted, in civil rights actions, the concept of supervisory liability is not to be equated with a supervisor's vicarious liability for the misdeeds of subordinates.

> In a § 1983 suit or a <u>Bivens</u> action -- where masters do not answer for the torts of their servants -- the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.  In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose <u>Bivens</u> liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009).

After <u>Iqbal</u>, the Court of Appeals has recently expressed uncertainty as to the viability and scope of supervisory liability.  <u>See</u>, <u>e.g.</u>, <u>Arqueta v. United States Immigration and Customs Enforcement</u>, 643 F.3d 60, 70 (3d Cir. 2011); <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 n.8 (3d Cir. 2010); <u>Bayer v. Monroe Cnty. Children & Youth Servs.</u>, 577 F.3d 186, 190 n.5 (3d Cir. 2009).  This uncertainty need not concern this Court in

---

individualized discipline or further rulemaking.  For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant."  <u>Sample v. Diecks</u>, 885 F.2d 1099, 1116 (3d Cir. 1989), <u>quoted in</u> <u>Rushing v. Apgar</u>, Civil No. 13-1103, 2013 WL 5435785, *4, n.5 (D.Del. Sept. 27, 2013).

this action, however, as Plaintiff alleges no facts that show a basis for imposing liability for failure to supervise even under the Third Circuit standard that pre-dates Iqbal. Here, no facts are alleged suggesting that the various supervisors deliberately established a policy that correctional officers could or should abandon their assigned posts or that the various supervisors had knowledge that these particular officers had abandoned their posts, either on this occasion or on other occasions. In any event, any failure to enforce policies regarding the presence of correctional officers at their assigned posts would amount to nothing more than negligence, not actionable under the Eighth Amendment.

For the foregoing reasons, all of the Eighth Amendment "failure to protect" and "failure to supervise" claims will be dismissed without prejudice.

2. Medical Treatment Claims

Plaintiff argues that SIS Officer P. Davenport, and two unidentified female correctional officers violated his rights under the Eighth Amendment when they delayed medical care for non-medical reasons on the night of the attack, and that SIS Lieutenant D. McCabe and Officer Davenport delayed medical care (including provision of pain medication) for non-medical reasons the next day. Plaintiff also contends that Dr. Ruben B. Morales

17

violated his right to adequate medical treatment, in violation
of the Eighth Amendment, by (1) refusing to authorize
ophthalmological evaluation, as advised by the South Jersey
Healthcare Regional Medical Centers report, resulting in
permanent damage to Plaintiff's eyes, (2) failing to timely
release Plaintiff's medical records for the recommended ENT
examination, for a nasal bone fracture, causing the ENT
specialist to be unable to treat Plaintiff, (3) permitting the
SIS officers to delay treatment, (4) failing to diagnose and
treat a hernia that arose as a result of the attack.

The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04
(1976).  In order to set forth a cognizable claim for a
violation of his right to adequate medical care, an inmate must
allege: (1) a serious medical need; and (2) behavior on the part
of prison officials that constitutes deliberate indifference to
that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
ABecause society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if

18

those needs are >serious.=@  Hudson v. McMillian, 503 U.S. 1, 9

(1992).  Serious medical needs include those that have been

diagnosed by a physician as requiring treatment or that are so

obvious that a lay person would recognize the necessity for

doctor=s attention, and those conditions which, if untreated,

would result in lifelong handicap or permanent loss.  Monmouth

County Correctional Institutional Inmates v. Lanzaro, 834 F.2d

326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988),

cited in Brown v. Rozum, 453 F.App'x 127, 128 (3d Cir. 2011).

    The second element of the Estelle test requires an inmate

to show that prison officials acted with deliberate indifference

to his serious medical need.  ADeliberate indifference@ is more

than mere malpractice or negligence; it is a state of mind

equivalent to reckless disregard of a known risk of harm.

Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a

prisoner=s subjective dissatisfaction with his medical care does

not in itself indicate deliberate indifference.  Andrews v.

Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v.

Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff=d, 729 F.2d 1453

(4th Cir. 1984).  Similarly, Amere disagreements over medical

judgment do not state Eighth Amendment claims.@  White v.

Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  ACourts will

disavow any attempt to second-guess the propriety or adequacy of

a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made.@  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor=s judgment concerning the proper course of a prisoner=s treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for
> medical treatment, however, and such denial exposes
> the inmate ">to undue suffering or the threat of
> tangible residual injury," deliberate indifference is
> manifest.  Similarly, where "knowledge of the need for
> medical care [is accompanied by the] ... intentional
> refusal to provide that care," the deliberate
> indifference standard has been met.  ...  Finally,
> deliberate indifference is demonstrated "[w]hen ...
> prison authorities prevent an inmate from receiving
> recommended treatment for serious medical needs or
> deny access to a physician capable of evaluating the
> need for such treatment."

Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).  AShort of absolute denial, >if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out.@  Id. (citations omitted).  ADeliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures

that >result[] in interminable delays and outright denials of medical care to suffering inmates.=@  Id. at 347 (citation omitted).

Here, the allegations regarding Plaintiff's injuries are sufficient to describe a serious medical need, both immediately following the attack and after the initial treatment at the emergency room.  Further, the allegations that the SIS and correctional officers delayed treatment for the purposes of conducting their investigations are sufficient to describe deliberate indifference to Plaintiff's pain and need for medical treatment.  Accordingly, the Eighth Amendment medical-care claim can proceed beyond this screening stage with respect to those defendants.

With respect to Dr. Morales, the claim that he permitted the SIS and correctional officers to delay treatment is sufficient to proceed beyond the screening stage.  In addition, the allegations that Dr. Morales failed to authorize the recommended follow-up treatment of Plaintiff's ophthalmic and nasal injuries are sufficient to state a claim.  The allegation that Dr. Morales failed to diagnose and treat a hernia, however, amounts to nothing more than an allegation of medical malpractice, not sufficient to state a claim under the Eighth Amendment.  Accordingly, the Eighth Amendment claim related to

21

the diagnosis and treatment of Plaintiff's hernia will be dismissed without prejudice.

C.   <u>Claims under the Federal Tort Claims Act</u>

Plaintiff asserts that the United States is liable under the FTCA for their failure to provide an adequate level of safety for him, as required by 18 U.S.C. § 4042(a), and as evidenced by their decision to house Garcia-Paredes in a medium-security institution and by failure to provide proper staffing and supervision by correctional officers.

The United States has sovereign immunity except where it consents to be sued. <u>U.S. v. Bormes</u>, 133 S.Ct. 12, 16 (2012); <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States.  <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-87 (1994).

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., constitutes a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1); <u>White-Squire v. U.S. Postal Service</u>, 592 F.3d 453, 456 (3d Cir. 2010). The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages,
> ... [3] for injury or loss of property, ... [4] caused
> by the negligent or wrongful act or omission of any

employee of the Government [5] while acting within the
scope of his office or employment, [6] under
circumstances where the United States, if a private
person, would be liable to the claimant in accordance
with the law of the place where the act or omission
occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995)

(quoting 28 U.S.C. § 1346(b)); see also CNA v. U.S., 535 F.3d

132, 141 (3d Cir. 2008) (quoting FDIC v. Meyer, 510 U.S. 471,

477 (1994)); United States v. Muniz, 374 U.S. 150 (1963).

Constitutional violations are not cognizable under the

FTCA; instead, claims under the FTCA are governed by the

substantive tort law of the state where the acts or omissions

occurred, here, New Jersey.  See FDIC v. Meyer, 510 U.S. 471,

477-78 (1994); Richards v. United States, 369 U.S. 1, 6 (1962);

Webb v. Desan, 250 F.App'x 468 (3d Cir. 2007); Ciccarone v.

United States, 486 F.2d 253, 257 (3d Cir. 1973); Shuster v.

Cabanas, Civil Action No. 11-1764, 2013 WL 3783891, *4 (D.N.J.

July 19, 2013).[4]

The FTCA, however, does not encompass all torts committed

by federal government employees.  Rather, the "discretionary

---

[4] Thus, as an initial matter, Plaintiff would need to show the
typical elements of the tort of negligence under New Jersey law:
(1) that the defendant owed a duty of care to the plaintiff, (2)
that the defendant breached that duty, (3) that the defendant's
breach caused the plaintiff's injuries, and (4) that the
plaintiff suffered damages. See generally Natale v. Camden
County Correctional Facility, 318 F.3d 575, 579 and n.3 (3d Cir.
2003); Weinberg v. Dinger, 106 N.J. 469, 484 (1987).

function" exception provides that the provisions of the FTCA shall not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  To determine whether the discretionary function exception applies, a court must determine (1) "whether the act involves an 'element of judgment or choice," and (2), if so, "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'"  Mitchell v. U.S., 225 F.3d 361 (3d Cir. 2000) (quoting U.S. v. Gaubert, 499 U.S. 315, 322 (1991)).  More specifically, with respect to the second requirement, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." Berkovitz v. U.S., 486 U.S. 531, 537 (1988).  See generally S.R.P. ex rel. Abunabba v. U.S., 676 F.3d 329 (3d Cir. 2012).

While federal law requires the Bureau of Prisons to "provide for the safekeeping, care, and subsistence" of all persons within its custody, 18 U.S.C. § 4042(a)(2), the statute leaves the implementation of these duties to BOP officials' discretion.  See Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998), cited in Thrower v. U.S., 528 F.App'x 108, 111 (3d Cir. 2013) and Rinaldi v. U.S., 460 F.App'x 80, 81-82 (3d

24

Cir. 2012).  Accordingly, the discretionary function applies and Plaintiff can not state a claim for negligent failure to protect under the FTCA.  This claim will be dismissed with prejudice.

IV.  CONCLUSION

For the reasons set forth above, all claims except certain Eighth Amendment medical-care claims will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies described above with respect to the claims dismissed without prejudice, the Court will grant Plaintiff leave to file a motion to amend, accompanied by a proposed second amended complaint.[5]  An appropriate order follows.


At Camden, New Jersey                        s/Noel L. Hillman
                                      Noel L. Hillman
Dated: March 5, 2014                  United States District Judge


---

[5] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  See West Run Student Housing Associates, LLC v. Huntington National Bank, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013) (collecting cases).  See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  Id.